FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 14, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARY EYVONNE GREEN,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-CV-0109-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 18, 19. Attorney Cathy M. Helman represents Mary Eyvonne Green (Plaintiff); Special Assistant United States Attorney David J. Burdett represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 10. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed applications for disability insurance benefits and supplemental security income on November 13, 2012, alleging disability since June 1, 2010, due to migraines, memory, thyroid, depression and cellulitis. Tr. 196, 203, 235. Plaintiff's applications were denied initially and upon reconsideration.

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

Administrative Law Judge (ALJ) Caroline Siderius held a hearing on July 23, 2015, Tr. 43-92, and issued an unfavorable decision on August 12, 2015, Tr. 21-33. The Appeals Council denied review on January 24, 2017. Tr. 1-6. The ALJ's August 2015 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on March 23, 2017. ECF No. 1, 6.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on March 11, 1981, and was 29 years old on the alleged onset date, June 1, 2010. Tr. 196. She obtained a GED in 1999, attended two years of college, and earned a certification as a nursing assistant (CNA) in 2005. Tr. 61, 236.

Plaintiff testified at the July 2015 administrative hearing that she resided in a home with her three children, ages 14, nine and six. Tr. 60. She stated she last worked as a CNA for St. Luke's Rehabilitation in 2011, Tr. 61-62, 63, and left that position when she suddenly begin experiencing "severe migraines" and her neck and fingers began becoming stiff. Tr. 62-63. When asked what she believed to be her primarty obstacle to finding a job, Plaintiff testified her memory issues, back issues, swelling in her feet, right leg pain, depression and PTSD were her main problems. Tr. 80. She later stated that her memory issues and "breakthrough headaches" prevented her from working. Tr. 84. Plaintiff's disability report indicates she stopped working on June 30, 2011 because of her condition(s). Tr. 235.

With respect to her alleged impairments, Plaintiff described being anxious around groups of people and having panic attacks about once a month, Tr. 65, problems with her memory as a side effect from taking headache medication

(Topamax), Tr. 66-67, having day-long breakthrough headaches about three to five times a week, Tr. 68, difficulty sleeping at night and experiencing daytime sleepiness, Tr. 71, having constant back and hip pain, Tr. 72-73, experiencing neck discomfort, Tr. 73-74, and having fluid retention or swelling and pain in her legs and feet, Tr. 74-75.

Plaintiff testified she was able to care for her own personal grooming and dressing, keep up with household chores, cook, shop, drive and take care of her own finances. Tr. 75-77, 80. She also reads, watches television and takes her dog for walks. Tr. 77.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards

were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs which claimant can perform exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 12, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 1, 2010. Tr. 23. At step two, the ALJ determined Plaintiff had the following severe impairments: migraine headaches, mild arthritis, degenerative disc disease, generalized anxiety disorder, and depressive disorder. Tr. 23. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 25.

///

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined she could perform light work, defined as lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently, and standing and/or walking up to six hours and sitting up to six hours all within an eight hour work day with normal breaks, with the following nonexertional limitations: she will need the ability to briefly change positions one time per hour without leaving her work station; she cannot work at unprotected heights and cannot operate heavy machinery; she cannot climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs; she can frequently balance and occasionally stoop, kneel, crouch and crawl; she must avoid exposure to extreme cold and concentrated exposure to odors, dusts, gases and fumes or other pulmonary irritants; and she can have occasional contact with co-workers and the general public. Tr. 27.

At step four, the ALJ found Plaintiff was not able to perform her past relevant work. Tr. 31. However, at step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of small parts assembler and mail room clerk. Tr. 32-33. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from June 1, 2010, the alleged onset date, through the date of the ALJ's decision, August 12, 2015. Tr. 33.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred in this case by (1) improperly rejecting Plaintiff's subjective complaints; and (2) concluding at step five of the sequential

///

evaluation process that Plaintiff would be capable of performing other jobs present in significant numbers in the national economy. ECF No. 18 at 7-15.

## DISCUSSION

**A.     Plaintiff's Symptom Testimony**

Plaintiff's primary argument is that the ALJ erred by improperly rejecting her subjective complaints. ECF No. 18 at 7-13.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but concluded that Plaintiff's overall symptom allegations were not credible. Tr. 28.

The ALJ determined that the objective medical evidence of record did not substantiate Plaintiff's allegations of disabling functional limitations in this case. Tr. 28-29. Once a claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject the claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *see also Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006) (an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence.").

With respect to Plaintiff's allegations of debilitating migraine headaches, the ALJ noted Plaintiff reported in October 2010 that her headaches were occurring only one to two times per month. Tr. 28, 418. There was then little treatment with respect to her headaches until March 2011, and she reported improvement at that time. Tr. 28, 424. On December 18, 2012, Plaintiff wrote that she suffered from severe migraines but that her medication (Topamax) "helps tremendously." Tr. 28, 255. On January 25, 2013, Plaintiff reported to her treating neurologist, John M. Wurst, M.D., that Topamax was "awesome" and she was now headache free. Tr. 537. However, on January 30, 2013, Plaintiff informed Dr. Wurst that she had applied for disability benefits based on her headaches and memory issues. Tr. 30, 538. At that time, Plaintiff told Dr. Wurst that while Topamax caused some issues with her memory, she did not want to stop taking the medication because "there has been such a substantial improvement in her headache control." Tr. 538. Dr. Wurst indicated that Plaintiff was able to recall details of prior examinations, she had a clear memory of events from the previous day, her speech was normal, and she was fully alert. Tr. 28, 538. He opined that Plaintiff's headaches had resolved and there was "no evidence of any neurologic reason for disability." Tr. 28, 538. On May 31, 2013, it was noted that Plaintiff's headaches had improved and were less frequent on Topamax. Tr. 28, 532. By March 2015, Plaintiff reported she was only taking Tylenol for her headaches and indicated the headaches were better controlled. Tr. 25, 28, 666. Plaintiff's assertion of incapacitating limitations stemming from headaches is not supported by objective medical evidence.

As to Plaintiff's complaints related to her hip and back impairments, the record reflects essentially unremarkable physical findings. Tr. 29. An MRI in 2011 revealed minimal spondylosis in the lumbar spine, Tr. 49, 674, and imaging of Plaintiff's left hip in 2015 showed a possible labral tear in the acetabular superior lateral region of the hip but this was barely noticeable and later deemed "essentially normal," Tr. 738, 740-741. Tr. 24. In October 2011, Plaintiff had

intact sensation, reflexes, and strength; was able to heel-toe walk; and had a negative straight-leg raising test. Tr. 29, 722. In September 2012, it was noted that Plaintiff was able to ambulate independently and there were no neurological findings. Tr. 29, 344. In October 2012, a physical examination revealed Plaintiff had a normal gait, intact sensation, intact reflexes, and intact strength and tone. Tr. 29, 491. In February 2013, Plaintiff had no edema, intact strength, and intact sensation. Tr. 29, 508-512. In June and July 2014, Plaintiff had shown exaggerated tenderness upon examination, but the remaining findings were normal. Tr. 29, 568, 575-576, 588. Minimal findings were recorded in September 2014. Tr. 29, 637. By April 2015, Plaintiff showed diminished strength in her left hip, but the remainder of the examination was again within normal limits. Tr. 29, 675. In July 2015, it was noted that Plaintiff had an antalgic gait, but she had good range of motion, had no tenderness to palpitation, and was able to get on and off the examination table on her own. Tr. 29, 738. As indicated by the ALJ, there is no indication in the record that Plaintiff was unable to ambulate effectively, nor evidence that Plaintiff had decreased motor strength, decreased reflexes or diminished sensation. Tr. 25.

Furthermore, no medical professional of record has assessed greater physical limitations than as determined by the ALJ in this case. On September 6, 2013, state agency reviewing physician Alnoor Virji, M.D., opined that Plaintiff had no exertional limitations but did have some postural and environmental limits. Tr. 125-126, 136-137. Greater limitations were assessed by the medical expert, Judy Panek, M.D., on July 23, 2015. Dr. Panek opined that Plaintiff would be limited to work at the light exertional level with additional postural and environmental limitations. Tr. 50-51. The ALJ accorded Dr. Panek's findings "great weight," Tr. 30, and ultimately concluded Plaintiff could perform light exertion level work with some postural and environmental limitations, Tr. 27.

///

The objective medical evidence does not support Plaintiff's allegations of greater limitations stemming from her hip and back impairments than as assessed by the ALJ in her RFC determination.

Finally, with regard to Plaintiff's assertion of disabling limitations stemming from mental health issues, state agency reviewing consultants, Renee Eisenhauer, Ph.D., and John Gilbert, Ph.D., opined that Plaintiff would be capable of performing simple, repetitive tasks; would be able to persist as needed for the completion of work tasks in an average work environment; would be limited from working closely with the public; and would be limited from working in hazardous environments. Tr. 105-106, 127-129. In addition, on February 18, 2013, Plaintiff was referred for a psychological examination with Dennis R. Pollack, Ph.D. Tr. 30, 503-507. Dr. Pollack noted Plaintiff's behavior during the mental status examination was "very unusual." Tr. 505. Based on Plaintiff's unusual presentation, Dr. Pollack did not offer an opinion on Plaintiff's functioning but instead recommended malingering testing. Tr. 506. The record further reflects Plaintiff is independent in self-care and able to prepare meals, care for her young children, perform household chores, drive, go shopping, pay her own bills, handle a savings account, spend time with her family, get along with friends, family and neighbors, and interact appropriately with healthcare providers who describe her as "cooperative" and "pleasant." Tr. 29, 256-259, 312, 503. Based on the foregoing, the Court agrees with the ALJ's finding that Plaintiff's allegations of significant mental health limitations are not supported by objective evidence. Tr. 29.

The Court finds the ALJ correctly concluded that the objective medical evidence of record does not support the disabling physical and psychological limitations alleged by Plaintiff in this case.

As an additional basis to discount Plaintiff's subjective complaints, the ALJ specifically cited Plaintiff's results on intellectual testing with Dr. Pollack, Tr. 505-506, noting the scores were likely invalid. Tr. 28. A lack of cooperation during an

examination or a display of "poor effort" by a claimant may be used to illustrate a claimant's tendency to exaggerate. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (finding that the ALJ's decision to discredit the claimant's statements was supported by the claimant's tendency to exaggerate). As discussed above, Dr. Pollack recommended malingering testing based on Plaintiff's unusual behavior during the mental status examination. Tr. 505-506. Plaintiff's display of poor effort or exaggeration of symptoms on exam was a proper basis to discount her subjective complaints.

The ALJ noted the record also reflected that Plaintiff had made unreliable statements regarding her drug use. Tr. 29. An ALJ may properly consider evidence of a claimant's substance use in assessing credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding). At the administrative hearing, Plaintiff was not initially forthright when questioned about her use of illegal drugs; however, when specifically questioned about marijuana and cocaine, Plaintiff admitted to past use. Tr. 83. Furthermore, counseling notes from December 2014 indicate Plaintiff had tested positive for cocaine, but Plaintiff did not admit to knowingly using cocaine, instead claiming someone must have put it in her drink at a barbeque she had attended. Tr. 709. Plaintiff's testimony and statement regarding her past use of illegal drugs appears disingenuous.

The ALJ further suggested Plaintiff's failure to use prescribed medication for her anxiety symptoms diminished her credibility. Tr. 29. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ

cited a 2014 counseling note which indicated a drug screen showed Plaintiff was not taking her prescribed medication for pain, anxiety and insomnia. Tr. 29, 567-568 (11F/10, 11). Plaintiff's failure to comply with the medical treatment prescribed by her physicians; namely, taking her prescribed medications, was another valid reason for the ALJ to discount her assertion of disabling limitations.

Finally, the ALJ noted Plaintiff's reported activities, including her ability to care for her children, drive a car, pay her own bills, and go shopping, conflicted with her alleged disabling symptoms. Tr. 29, 31. With regard to her daily activities, it is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair*, 885 F.2d at 603. The ALJ properly found that such activities were inconsistent with Plaintiff's alleged limitations and thus detracted from her overall credibility.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's symptom allegations were not entirely credible in this case.

**B.     Step Five**

Plaintiff next contends the ALJ erred by relying on the vocational expert's testimony to find that she was capable of performing other work existing in significant numbers in the national economy. ECF No. 18 at 13-15.

///

As determined above, the ALJ did not err by finding Plaintiff's subjective complaints less than fully credible. *Supra*. Plaintiff does not otherwise challenge the ALJ's assessment of the medical evidence or RFC determination. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (the Court will not ordinarily consider matters on appeal that were not specifically and distinctly argued in an opening brief); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief . . . . We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim."). Consequently, the weight of the record evidence in this case supports the ALJ's ultimate RFC determination.

At the administrative hearing held on July 23, 2015, the vocational expert testified that with the restrictions assessed by the ALJ, Plaintiff retained the capacity to perform a significant number of jobs existing in the national economy, including the positions of small parts assembler and mail room clerk. Tr. 87-89. Since the vocational expert's testimony was based on a proper RFC determination by the ALJ, Plaintiff's step five argument, ECF No. 18 at 13-15, is without merit. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the ALJ did not err in omitting limitations in a hypothetical to the vocational expert that a claimant claimed, but had failed to prove).

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

///

///

2. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

Dated March 14, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE